In re Jackson.

(No. 75AP-83—Decided July 29, 1975.)

*Mr. George C. Smith*, prosecuting attorney, and *Mr. Alan C. Travis*, for appellee, the state of Ohio.

*Ms. Carolyn Watts*, Legal Aid & Defender Society, Ms. *Judith M. Stevenson* and *Mr. Thomas J. Jedinak*, for appellant Ronald Eugene Jackson.

Strausbaugh, J. This is an appeal by defendant of a conviction and sentence of the Court of Common Pleas, division of domestic relations. The court found defendant guilty of negligent homicide, R. C. 2903.05, and held him to be a delinquent minor. Charles Owens testified that approximately a week before the incident in question he took a .22 caliber revolver to the residence of the defendant and defendant's sister Jannie, for the protection of Jannie; that he placed it in a desk drawer in the front room for safekeeping; that he went back later that day and unloaded it, and put the bullets in the same drawer with the gun; that he thought he had told the defendant what he had done with the gun; that he had checked the drawer two or three times subsequent to putting it there and that the gun was there with the bullets beside the gun.

The defendant testified that at the time of the incident he was at home watching television with the victim

Penny Harper, and that Charles Owens and several other friends had been in and out of the house most of the day and had returned early that evening, at which time they began peeking into the living room and tapping on the window. The defendant stated he heard someone "messing around the window"; that he didn't really know who it was; that he heard a snickering and tapping and saw heads peeping in the window, whereupon, he ran quickly to the window snatching it open to scare them; that the persons started running; that he then got Charles Owens' gun; and that he thought it was unloaded because he had seen Charles Owens with the gun in one pocket and the bullets in the other pocket. He stated:

"At the moment when I grabbed the gun, the bullets, I didn't know if the bullets were in the gun or not. * * * I didn't even know if it was loaded or not cause I didn't really look, I just opened the drawer and just pulled it out, like I didn't have my hand on the trigger or nothing, like I just carrying it, you know, with my hand wrapped around it, around it tri * * * around the hammer. So like you know, they say 'Ron crazy' you know, so they take off up the street, so I jump out the window and chase. * * * So I open the window and jumps out of it, so they goes that way, Charles run behind the house, so he run around my car a couple of times, and then he fell. So I run up on him, and I look at him, look at him like this, and I walks away."

The defendant continued that, at this time, he said nothing to Owens but just looked at him, smiled and walked in the house; that he thought this was the end of the chase because Owens had his dress clothes on and the defendant thought he had had enough; that as he walked in the kitchen he pushed the back door behind him, he could see Rick King standing on the left of the refrigerator and Penny standing beside him; that she had been sitting on the floor, but she had gotten up; that he was standing in front of her and was getting ready to put the gun back in the drawer; that they started talking about the shows that were coming to the Ohio Theatre. He stated: "* * * [A]ll of a sudden something hit me by the shoulders. So my reflex, you know, come back like this." He stated that

he did not know who it was and that as soon as his shoulders were grabbed by Owens the gun went off fatally wounding Penny Harper. The defendant immediately dropped the gun and with Rick King took Penny Harper to St. Anthony's Hospital.

Defendant's first assignment of error reads:

"The verdict of the trial court is not supported by the evidence and is contrary to law."

R. C. 2903.05 states, in part:

"(A) No person shall negligently cause the death of another by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code.

R. C. 2901.22(D) provides:

"A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist."

This case appears to be one of first impression in the state of Ohio under this section. The law prior to the enactment of R. C. 2903.05 was that a perpetrator of a homicide was not criminally responsible when the act resulted from a negligent act, unless such act had been made unlawful or was prohibited by statute. The present statute requires action which would constitute more than ordinary tort negligence in order to constitute a violation. To constitute an offense, the action of the defendant must arise from a "substantial lapse from due care." We find that there has been a substantial lapse from due care when the defendant should have been aware of the likelihood or possibility of the result emanating from the action taken by the defendant.

In the case before us, where the defendant picks up a gun, without checking to see if it were loaded, jumps out of a window and begins chasing friends around the yard with the gun in hand and then back into the kitchen of his home, facing two friends still with the gun in his hand, we find that such action on the part of the defendant may be

found to be a substantial departure or lapse from due care which would enable the trier of the facts to find an offense under this section.

The prosecution points out that there is expert testimony that a pressure of 12 pounds is necessary before the gun will fire, proving that the gun will not fire accidentally; further, that the bullet took a downward path through the victim's body and, inasmuch as the defendant was six feet five inches tall, if the gun were discharged as his arm went up into the air, the only way the incident could have taken place as claimed by the defense would have been if the victim had been standing on her head from the ceiling. We find these circumstances not to be relevant under the charge for which the defendant has been convicted. The only question before us is whether there has been negligence with respect to circumstances when, because of a substantial lapse from due care, defendant fails to perceive or avoid a risk that such circumstances may entail. We hold that the finding of the trial court is not contrary to law and, that, defendant's conviction for negligent homicide is supported by the evidence. Defendant's single assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

REILLY and McCORMAC, JJ., concur.

McCORMAC, J., concurring. This case illustrates the undesirable situation that has resulted in the creation of a culpable mental state of negligence under the criminal laws of Ohio. Not only does the law make a person a criminal offender under situations where no morally blameworthy conduct was involved or where punishment will not deter socially disruptive behavior, but it also has created undefined and undefinable terminology which will, without doubt, result in highly discriminatory treatment of persons who commit essentially the same act. In some jurisdictions, negligent crimes will not be prosecuted due to either police or prosecutorial discretion, and in other jurisdictions juries will refuse to convict under identical factual patterns where prosecutions are brought and convictions are obtained in

other areas of Ohio. The negligent traffic manslaughter provisions formerly contained within the Revised Code were ample proof of this state of affairs, and even those prosecutions required the commission of an unlawful act, to wit, a traffic offense.

R. C. 2901.22, entitled "Culpable mental states," contains a provision for criminal responsibility for reckless behavior, as follows:

"(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

Thereafter the negligent mental state is defined as follows:

"(D) A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist."

The staff notes and the majority opinion indicate that negligent criminal conduct, when made a crime as in the instant case, involves something more than ordinary tort negligence and, obviously, something less than reckless conduct. The facts in this case and the definitions cited do not bear out this analysis. Tort negligence consists of a failure to exercise due care, or a lapse from due care. That lapse may be a significant or substantial lapse, or it may be a minor lapse. In either event, if damages were proximately caused by the lapse, tort negligence results. A substantial lapse of due care, as defined in R. C. 2901.22 (D), merely defines a *degree* of tort negligence; *i. e.*, tort negligence which is presumably more than the minimum, but clearly somewhere within the range of ordinary tort negligence, as it is something less than the next definable standard, reckless conduct.

The terminology itself is rather contradictory as substantial indicates ample or significant, and lapse indicates a small error. What is an ample, small error? That determination will frequently, if not always, involve after-the-fact circumstances. What did that ample, small error cause? The result is predictable—a completely unequal application of this standard and the criminal conviction of persons in situations where no intent was involved and there was no morally blameworthy conduct. Under the wrong set of circumstances almost anyone can become a criminal offender using this standard of culpable mental state. There is a great tendency to judge the substantiality of one's lapse from care by the harm actually caused.

In this particular case, no one can quarrel with the proposition that a person should not horse around with a gun which may be loaded; yet, the harm caused was to a person close to the defendant, the juvenile defendant's girl friend. It was unintended, and presumably came at the time that defendant was returning the gun to the desk drawer. Many unfortunate accidents happen through the careless and improvident use of firearms and these accidents are to be deplored. One could well argue that any lapse of due care involving a dangerous weapon is a substantial lapse. The standard provides no real answer to that question.

The true test of the equality of application of R. C. 2903.05 will be when a well-meaning citizen negligently permits a small child to gain access to a weapon and a death results, perhaps to his own child. That situation, in my opinion, constitutes a more substantial lapse of care, if lapse of care can be graded, than in the instant case. Will that grieving parent be convicted of negligent homicide?

After having said what I have, it is necessary to point out that the adoption of criminal laws and definitions of standards of culpable mental state are for the General Assembly, and it is the court's function only to define the criminal laws as applied to the particular facts in question. There is sufficient evidence to indicate a substantial lapse from due care, and the trier of the facts so found. Consequently, the judgment must be affirmed.