THE STATE OF OHIO, APPELLEE, *v.* CUMMINGS, APPELLANT.

(No. 48509—Decided February 25, 1985.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*William T. McGinty* and *Robert J. Triozzi,* for appellant.

PATTON, J. This appeal arises from the judgment entered by the Cuyahoga County Court of Common Pleas which found the appellant, Frank Cummings, a.k.a. Frank Knabb, guilty of felonious assault with a gun, in violation of R.C. 2903.11. The facts giving rise to this appeal as contained in the record provide the following.

On June 7, 1982, appellant was indicted for the felonious assault of Leonard McClure, in violation of R.C. 2903.11. The indictment contained a gun specification.

On March 22, 1984, trial commenced before a jury. After presentation of the state's case-in-chief, the defense moved the court pursuant to Crim. R. 29 for a judgment of acquittal. The motion was overruled. On March 27, 1984, the defense completed its presentation. Thereafter, the jury began its deliberations.

On March 29, 1984, the jury returned its verdict and found appellant guilty of felonious assault with a gun. The case was passed for sentencing to April 2, 1984, at which time appellant was sentenced to a term of five to fifteen years in the Columbus Correctional Facility. On April 11, 1984, appellant filed his notice of appeal.

This case arises from a shooting incident on March 24, 1982, at the Couch Lounge located at 3875 East 93 Street, Cleveland, Ohio, at approximately 12:30 a.m. The victim, Leonard McClure, is the manager of the bar. In the late evening of March 23, 1982, and early hours of March 24, 1982, McClure made one of his routine supervisory visits to the bar.

McClure testified that at approximately 12:30 a.m., he was sitting at the bar talking with a barmaid by the name of Jacqueline LaVette. McClure testified that a man entered the bar, walked up to them and asked LaVette where the restroom was located and then went into it. McClure stated that he saw another person just outside the door so he got up from his bar stool to investigate.

McClure stated that upon reaching the front door, he turned when he heard someone say "Leonard, look out." He also heard someone else say "he got a gun." As McClure turned, he saw the man emerge from the restroom. McClure testified that he saw an object in the man's hand and heard three gunshots. McClure dropped to the ground and attempted to crawl to safety as the assailant ran out the door. He testified that he realized he had been hit after he felt a stinging sensation in his leg. At trial, the victim identified appellant as his assailant. The defense counsel also stipulated to a copy of the emergency room report of McClure.

McClure testified that he had seen appellant "quite a few times" before the night of the shooting. He testified that he knew appellant to go by the name of "Frank" but was unaware of his last name. McClure stated that about one month prior to the shooting, in February 1982, appellant had had "a few words" with one of the barmaids. After the victim offered to pay for the appellant's beer, appellant stated that he felt he was being picked on, and threw a punch at McClure. McClure testified that he knocked appellant down and some other men carried him out of the bar. McClure testified that he told the appellant not to come back.

The police spoke to McClure on the night of the shooting, again on March 30, 1982, and then took his statement on June 7, 1982. In April 1982, the victim looked at a number of photographs at the Justice Center. Appellant's photograph did not appear in the photo arrays shown to McClure. Therefore, no identification was made.

On May 5, 1982, as McClure parked his car across the street from the bar, a barmaid came out and told him that "Frank" was in the bar. McClure proceeded to flag down an approaching police car and told the officers that appellant was the man who had shot him.

As appellant left the bar, the police officers asked to speak with him. Appellant was searched, but no weapons were found. He was then arrested and taken to jail.

Jacqueline LaVette, the barmaid working at the time of the incident, testified that appellant was about five feet from her and beneath a light when he asked her about the restroom. Appellant was only in the bathroom for a few seconds before he came back out. She testified that she looked directly at appellant's face when he exited the restroom. She observed appellant with a silver gun in his hand. She testified that she yelled to warn McClure, then ducked so she was only able to hear the shooting. In May 1982, LaVette picked appellant out of a lineup at the Justice Center.

The state also presented the testimony of the various police officers involved with the investigation and the arrest.

The defense then presented testimony of various witnesses to confirm appellant's alibi. Gail Cummings, appellant's older sister, testified that appellant was at her house on the night in question and left sometime after midnight. Beverly Smith testified that appellant arrived at her house at approximately 1 a.m. on March 24, 1982, and spent the rest of the night with her. Appellant also testified. He confirmed the testimony of his sister and Smith and denied shooting McClure.

The jury returned a verdict of guilty and appellant assigns four errors on appeal:

"I. The trial court erred in not allowing appellant's counsel to inspect Leonard McClure's statement of March 24, 1982, contained in the police report.

"II. The trial court erred in not allowing appellant's counsel to inspect the report prepared by Sharon Caine, and used by her to refresh her recollection before testifying.

"III. In-court identification of appellant by state witnesses Leonard McClure and Jacqueline LaVette violated appellant's right to a fair trial and due process of law.

"IV. The verdict which found appellant guilty of felonious assault with a gun was against the manifest weight of the evidence."

I

In his first assignment of error, appellant contends that he should have been allowed to inspect McClure's "statement" of March 24, 1982, which was contained in a police report. This contention is without merit.

As its first witness, the state called the victim of the shooting, Leonard McClure. McClure testified that he made a police report on the night of the shooting, March 24, 1982, as well as giving the police a sworn statement in June. Prior to the cross-examination of McClure, appellant's counsel requested *in camera* inspections for both reports. Appellant's counsel was allowed to inspect only the statement of June 7, 1982.

Crim. R. 16(B)(1)(g) provides for an *in camera* inspection of a witness' statement following direct examination. The rule provides in part:

"* * * [T]he court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement."

Before the document may be inspected, it must be determined whether

or not it is a "statement" as used in Crim. R. 16(B)(1)(g). In *State* v. *Johnson* (1978), 62 Ohio App. 2d 31 [16 O.O.3d 74], at 35-36, the court examined Crim. R. 16(B)(1)(g) and held:

"The rule does not define the word 'statement'; we therefore look to the purpose of that provision, the rules of construction expressed in Crim. R. (1)(B), and to cases from this and other jurisdictions involving similar rules for guidance in our interpretation of the term. The federal statute relating to demands for the production of witnesses' statements, Section 3500, Title 18, U.S. Code, commonly known as the Jencks Act, defines statement as:

" '(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

" '(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; * * *
" '* * *'

"We find the following explanation of the Jencks Act from the annotation in 5 L. Ed. 2d 1014, 1025, 1026-1027, Sections 12[a] and [c] to be helpful in the instant case:
" '* * *

" '[c] Only a "substantially verbatim," not a precisely verbatim, recital of a government witness' pretrial oral statement is required. * * * What is meant is that the statement should give the substance of what a government witness said and, so far as the substance is concerned, substantially in the words of the witness. To be "substantially verbatim," a document must contain a fairly comprehensive reproduction of the witness' words, and continuous, narrative statements made by the witness, and not merely fragmentary notes, jottings, scraps, or writings, or the agent's own interpretations or impressions.' "

Therefore, before a writing or recording can be considered a "statement" of the witness, it must be shown that either the witness " '* * * prepared, signed or adopted the statement, [or] that it minimally is a continuous, narrative statement made by the witness and recorded verbatim, or nearly so.' " *Johnson, supra,* at 37 (quoting from *State* v. *Houston* [Iowa 1973], 209 N.W. 2d 42, 46).

In *State* v. *Washington* (1978), 56 Ohio App. 2d 129 [10 O.O.3d 150], at paragraph two of the syllabus, the court held:

"Notes made by a police officer during an interview with a witness to a crime are not subject to an in camera inspection within the intent and meaning of Crim. R. 16(B)(1)(g)."

Further, at 132-133, the court stated:

"As will be noted, the only statement subject to such a procedure is one which is written or recorded. The word 'written' in this context does not refer to notes made by a detective talking to a witness during an investigation. The word 'written' refers to a writing made by a witness or by someone else at that witness' direction. * * *

"This construction that such notes made as a result of an oral interview are not referred to by this subsection of the rule is strengthened by comparing this subsection with subsection (B)(1)(a)(i) and (ii) of this same rule wherein a distinction is made between 'relevant written or recorded statements' and 'written summaries of any oral statement.' The failure to include a reference to summaries of oral statements in the subsection under consideration when such reference was included in the prior subsection in the same rule indicates an intent to exclude oral statements and notes taken of them from the operation of subsection (g). Furthermore, it is even doubtful if the private notes of the detective could be classified as written sum-

mary of an oral statement if such a category had been included in subsection (g).

"It is clear to us that such memoranda were not included within the purview of this subsection because it would be incorrect to permit a perusal of notes made by a detective which do not have the imprimatur of the witness. The notes may or may not be accurate and a witness should not be bound by or cross-examined concerning them unless they have received his approval."

Clearly, a written statement signed or otherwise adopted or approved by the witness would serve the purpose of Crim. R. 16(B)(1)(g) and fall within the plain meaning of the word "statement" as would a recording of the witness' words or a transcription thereof. The document in the case *sub judice,*[1] which was made part of the record on appeal, does not fall into either of the previously mentioned categories.

In *State* v. *Daniels* (1982), 1 Ohio St. 3d 69, at 70-71, the Ohio Supreme Court held:

"We construe Crim. R. 16(B)(1)(g) to mean that, once the trial court independently determines that a producible out-of-court witness statement exists, attorneys for all parties must be given the opportunity to inspect the statement personally. The trial court's simply permitting the attorneys to be passively present and available for consultation during the *in camera* inspection constitutes reversible error."

Defense counsel is entitled to participate in an *in camera* inspection "once" the trial court independently determines that a producible out-of-court witness statement exists. In the case *sub judice,* defense counsel was properly denied inspection of the police report because it did not contain a "statement" of the witness within the meaning of Crim. R. 16(B)(1)(g).

Accordingly, appellant's first assignment of error is without merit.

## II

In his second assignment of error, appellant contends that under Evid. R. 612, it was error to deny defense counsel the opportunity to inspect the police report that Officer Caine prepared and used to refresh her memory prior to testifying for the state. This contention is without merit.

Evid. R. 612 provides in pertinent part:

---

[1] The text of the report is as follows:

"REPORTS: While sitting at the bar w/the barmaid, below described suspect #1 came inside. He asked the barmaid where the men's room was and went the [*sic*] Victim observed suspect #2, described below, peeking inside the door. Victim went to the door to see who it was and suspect #2 left. Victim then heard the barmaid screaming and shots being fired. He saw suspect #1 with a chrome revolver shooting. Victim was then shot through the legs by the suspect as he was trying to hide behind the bar. Both suspects fled eastbound on Elizabeth, on foot.

"SUSPECT:

"#1-BM, early 20's, 5/9-6/0, slender bld., brown 3/4 lgth. jacket, brown skull cap, lt. colored pants, armed w/chrome revolver, make and model unknown.

"#2-BM, blk. short leather jacket, NFD.

"Both fled on foot, eastbound on Elizabeth from E. 93rd St.

"Victim conveyed to St. Alexis Hsp., by C-MED #8, whre [*sic*] he was treated by Dr. Kotia, who reports 2 gunshot wounds, one upper right leg, and one lower left leg, victim T. & Released.

"INTERVIEW:

"JACKIE LAVETTE, 50FBWD, 4288 E. 114th, 341-4195, barmaid time of shooting, confirms above description of suspect and incident.

"BRANDON WILLIAMS, 22BMS, 10005 Aetna, 641-0340, reports watched suspect #1 go into men's room, and suspect #2 looking thru the door, then saw suspect #1 come out of men's room w/a gun and started shooting."

"Except as otherwise provided in criminal proceedings by Rule 16(B)(1)(g) * * * if a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. He is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. * * *"

When considering Evid. R. 612, a plain reading of the rule indicates that the requested inspection is subject to the sound discretion of the trial judge. In the case *sub judice,* the court, pursuant to the rule, found that "in the interest of justice" it was not necessary for defense counsel to inspect the writing.

Furthermore, the Staff Note of Evid. R. 612 indicates that the trial court made the proper decision. The note provides that the discretion given to the judge by the rule "serves to avoid the rule being used as an additional method of discovery, particularly as to work product and pretrial preparation."

In addition, in *State* v. *Smith* (1976), 50 Ohio App. 2d 183 [4 O.O.3d 160], at paragraph two of the syllabus, this court held:

"In the trial of a criminal case an accused's counsel is not entitled to inspect a written police report where an officer does not use the report while testifying, notwithstanding the fact that he read it to refresh his recollection prior to taking the witness stand."

Therefore, police reports are precluded from inspection under Evid. R. 612. See, also, *State* v. *Adams* (Sept. 29, 1983), Cuyahoga App. No. 44407, unreported.

Accordingly, appellant's second assignment of error is without merit.

III

In his third assignment of error, appellant contends that the in-court identification of the appellant by Leonard McClure and Jacqueline LaVette denied him due process and a fair trial. This contention is without merit.

The record is void of any pretrial motion to suppress the identification testimony. Crim. R. 12(C) and (G) provide:

"(C) Motion date. All pretrial motions except as provided in Rule 7(E) and Rule 16(F) shall be made within thirty-five days after arraignment or seven days before trial, whichever is earlier. The court in the interest of justice may extend the time for making pretrial motions.

"* * *

"(G) Effect of failure to raise defenses or objections. Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to subdivision (C), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for good cause shown may grant relief from the waiver."

See, also, *State* v. *Wade* (1978), 53 Ohio St. 2d 182 [7 O.O.3d 362], vacated on other grounds (1978), 438 U.S. 911.

Even assuming, *arguendo,* that the objection was not waived, the testimony by the two witnesses satisfies the factors of reliability set forth in *State* v. *Moody* (1978), 55 Ohio St. 2d 64 [9 O.O.3d 71]. In *Moody,* the Ohio Supreme Court held:

"* * * The factors affecting reliability include '* * * the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the

witness at the confrontation, and the length of time between the crime and the confrontation.' *Neil* v. *Biggers* (1972), 409 U.S. 188, 199. * * *''

A review of the record in the case *sub judice* indicates that the testimony of the two witnesses satisfies the requirement of *Moody.*

Accordingly, appellant's third assignment of error is without merit.

## IV

In his fourth assignment of error, appellant contends that the verdict was against the manifest weight of the evidence. This contention is without merit.

In *State* v. *DeHass* (1967), 10 Ohio St. 2d 230 [39 O.O.2d 366], paragraph one of the syllabus, the Ohio Supreme Court determined that the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts during the trial of the case. If the record shows that a guilty verdict was returned by the jury on sufficient evidence, and no prejudicial error occurred in the trial or in the instructions to the jury, then the reviewing court may not reverse the judgment of conviction. *State* v. *DeHass, supra,* paragraph two of the syllabus. See, also, *State* v. *Eley* (1978), 56 Ohio St. 2d 169 [10 O.O.3d 340].

The facts recited in this opinion indicate that sufficient evidence was presented to return a guilty verdict.

Accordingly, appellant's fourth assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

CORRIGAN, C.J., and NAHRA, J., concur.