The STATE of Ohio, Appellee,

v.

MOORE, Appellant.

[Cite as *State v. Moore* (1991), 74 Ohio App.3d 334.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–731.

Decided May 28, 1991.

336

*Michael Miller,* Prosecuting Attorney, and *Bonnie L. Maxton,* for appellee.
*Dennis C. Belli,* for appellant.

WILLIAM J. MARTIN, Judge.

Defendant, Antonio Lee (Leroy) Moore, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of voluntary manslaughter in violation of R.C. 2903.03 with a firearm specification under R.C. 2941.141.

The Franklin County Grand Jury indicted defendant on January 16, 1990 for one count of aggravated murder (R.C. 2903.01) with a firearm specification pertaining to the October 2, 1989 death of Carla Mathews. At his arraignment on January 19, 1990, defendant entered a plea of not guilty.

The defendant filed a pretrial motion on March 16, 1990 to compel the disclosure of certain state witnesses' "statements" pursuant to R.C. 149.43. The trial court ordered these materials produced for *in camera* inspection, and on April 2, 1990, that court denied defendant's motion.

A jury trial was commenced on March 28, 1990 and, on April 2, 1990, the jury returned a verdict of not guilty of aggravated murder, but guilty of the lesser included offense of voluntary manslaughter with a firearm specification. The trial court ordered the preparation of a presentence investigation and report, and continued the matter for sentencing.

On June 6, 1990, defendant was sentenced to an indefinite term of incarceration of ten to twenty-five years for the aggravated first degree felony of voluntary manslaughter, plus three years' actual incarceration for the firearm use. In its June 11, 1990 sentencing entry, the trial court indicated that it had expressly considered the R.C. 2929.12 and 2951.02 factors in imposing the above sentence.

As background, defendant on October 1, 1989, had been "holding" $1,500 cash for a friend, Robert Vincent, apparently as drug sale proceeds. While in his rented motor vehicle, defendant was allegedly approached by the victim, Carla Mathews, who sought a ride home. Defendant consented, and the victim and another male individual, posing as her "brother," both got in defendant's car with the other man seating himself behind defendant. Subsequently, defendant claims these passengers robbed him of $1,000 of Vincent's money at gunpoint, and then exited the vehicle.

After this alleged robbery, defendant sought out his cousin, Nathaniel Moore (a minor), and they drove back to the robbery area trying to find the two perpetrators and retrieve the money. Nathaniel Moore obtained a loaded revolver before their search began.

Approximately one-half hour after the alleged robbery, or roughly 1:30 a.m. on October 2, 1989, near Granville Street in Columbus, defendant spotted Carla Mathews on the street. Both defendant and Nathaniel Moore exited

their automobile and approached Mathews. When she failed or refused to answer defendant's questions regarding the alleged robbery incident, Nathaniel removed the handgun from his jacket pocket and handed it to defendant in his right hand. Defendant admitted to then being "mad."

The revolver discharged at relatively close range to the victim's head (greater than six inches and less than two feet). The fatal bullet entered the left side of Mathews's head near the lower eyebrow, and travelled horizontally to the right side, front to back. She later died on October 2, 1989 in the hospital.

The trial evidence was in conflict on certain facts. Defendant denied striking the victim with his hand or fist prior to the weapon discharging, while two eyewitnesses, if believed, claimed he did. Defendant claimed the victim reached for the revolver and a "tussle" ensued resulting in the weapon's discharge. State's witness, Keith Kendrick, testified that defendant first threatened to "shoot" the victim, and then did so without any struggle. Nathaniel Moore first stated there was no struggle, and later claimed that there was. Further, defendant testified that the revolver was already cocked when Nathaniel handed it to him, a fact which Nathanial denied. Apparently, the weapon required manual "cocking" before it could be fired.

From the conviction and sentence, defendant filed a timely notice of appeal on June 22, 1990, and sets forth seven assignments of error, as follows:

"1. The trial court erred in denying Defendant–Appellant's pretrial Motion for Disclosure of Witness Statements pursuant to R.C. 149.43.

"2. The trial court erred in permitting the prosecuting attorney to attack the credibility of State's witness, Nathaniel Moore, by means of a prior inconsistent statement, and erred in denying Defendant–Appellant's Motion for Mistrial where the record failed to demonstrate surprise and affirmative damage as required under Evid.R. 607.

"3. The trial court erred in permitting the prosecuting attorney to place before the jury, through extended questioning of the state's witness, Nathaniel Moore, and through extrinsic evidence in the form of a tape recording, the entirety of the witness's prior statements to the police.

"4. The trial court erred in refusing to instruct the jury on the defense of accident, as set forth in 4 O.J.I. Sec. 411.01, where accident had been raised as a defense and was supported by evidence.

"5. The trial court erred in refusing to instruct the jury on the lesser included offense of involuntary manslaughter, R.C. 2903.04(B), death caused by the commission of the misdemeanor of negligent assault, R.C. 2903.14,

where the testimony of the State's witnesses, under a reasonable view of the evidence, would have supported a conviction of the lesser included offense.

"6. Defendant–Appellant's conviction for voluntary manslaughter is not supported by sufficient evidence.

"7. The trial court abused its discretion in sentencing Defendant–Appellant to a maximum term of imprisonment without properly considering the mitigating factors set forth in R.C. 2929.12."

■ In his first assignment of error, defendant asserts that he had a mandatory right, pursuant to R.C. 149.43, to the pretrial disclosure of the written or recorded statements of the state's witnesses and/or written summaries of their oral statements. Following its *in camera* inspection of the materials at issue, on April 2, 1990, the trial court entered its judgment entry overruling defendant's motion, and concluded therein that "[h]aving found that said statements are not subject to discovery under Crim.R. 16, the court has determined that same are not otherwise subject to disclosure under R.C. 149.43. * * *"

Relying on *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786, defendant additionally claims error in the trial court's failure to identify, with specificity, which subsection of R.C. 149.43 was applied to determine such nondisclosure.

Initially, we observe that the trial court was correct in denying discovery under Crim.R. 16. Witness statements are expressly exempted from discovery per Crim.R. 16(B)(2) (*State v. Landrum* [1990], 53 Ohio St.3d 107, 119, 559 N.E.2d 710, 724). Under the same provisions, "police reports" are likewise not discoverable (*State v. Workman* [1984], 14 Ohio App.3d 385, 14 OBR 490, 471 N.E.2d 853; *State v. Cummings* [1985], 23 Ohio App.3d 40, 23 OBR 84, 491 N.E.2d 354; *Beachwood v. Cohen* [1986], 29 Ohio App.3d 226, 29 OBR 272, 504 N.E.2d 1186).

■ Defendant's pretrial request was limited only to the "statements" of witnesses or "summaries" thereof. In the common parlance of the criminal law and at least within the context of Crim.R. 16, the term "statement" includes: (a) a written statement actually signed, or otherwise adopted or approved, by a witness or party; (b) a mechanical recording of the witness's words or transcription thereof; or (c) a substantially verbatim recital of such statement in a continuous narrative form (*Cummings, supra; State v. Johnson* [1978], 62 Ohio App.2d 31, 16 O.O.3d 74, 403 N.E.2d 1003). A "summary" of a witness' oral conversation becomes a "statement" only if he has reviewed and signed, or otherwise adopted it, or if it is a nearly verbatim account as opposed to being merely the investigator's own selections, interpre-

tations, or interpolations (*State v. Jenkins* [1984], 15 Ohio St.3d 164, 223, 15 OBR 311, 361–362, 473 N.E.2d 264, 314; *State v. Henry* [1987], 37 Ohio App.3d 3, 523 N.E.2d 877; *State v. Washington* [1978], 56 Ohio App.2d 129, 10 O.O.3d 150, 381 N.E.2d 1142; *State v. Castillo* [Dec. 31, 1987], Lucas App. No. L–86–333, unreported, 1987 WL 31944).

An initial question arises whether any witness "statements," as above defined, even exist, either in the context of Crim.R. 16 or under R.C. 149.43. The trial court, in conformity with *Natl. Broadcasting, supra*, paragraph four of the syllabus, did conduct an *in camera* inspection of the materials in question, and then correctly preserved same in the record. We accordingly have also examined them, and reach the conclusion that none of said materials constitutes a witness "statement" or "summary" thereof. These materials are merely the interview notes of the investigating homicide detectives reproduced in police reports.

■ The trial court was correct in denying discovery under Crim.R. 16, and the remaining question is whether these interview notes, as part of a specific, ongoing police homicide investigation, must be disclosed as R.C. 149.43 public records.

It is clear that unless excepted from disclosure, law enforcement investigatory records must be disclosed under R.C. 149.43 (*Natl. Broadcasting, supra*, at paragraph one of the syllabus; *Sanford v. Kelly* [1989], 44 Ohio App.3d 30, 541 N.E.2d 124). One such exception at R.C. 149.43(A)(2)(c) is "specific investigatory work product." These interview notes, being related to a specific, pending homicide investigation and prosecution, fall outside the purview of "routine factual reports" which have been held subject to disclosure (*State ex rel. Beacon Journal v. Univ. of Akron* [1980], 64 Ohio St.2d 392, 18 O.O.3d 534, 415 N.E.2d 310; *State ex rel. Ware v. Cleveland* [1989], 55 Ohio App.3d 75, 562 N.E.2d 946). In our view, the reports in question, as interview notes, are akin to the autopsy reports deemed nondiscoverable as "specific investigatory work product" in *State ex rel. Dayton Newspapers, Inc. v. Rauch* (1984), 12 Ohio St.3d 100, 12 OBR 87, 465 N.E.2d 458 (see, also, *Yee v. Lechner* [1989], 49 Ohio App.3d 61, 550 N.E.2d 217; *State v. Trout* [June 12, 1989], Stark App. No. CA–7673, unreported, 1989 WL 67258).

The trial court was additionally correct in prohibiting disclosure under R.C. 149.43. While the better practice might be for a trial court to identify the exemption it invokes in denying disclosure, nothing contained in R.C. 149.43 or the case law to date mandates such requirement. We decline to create such a requirement.

Defendant's first assignment of error is not well taken.

■ Defendant's second and third assignments of error, relating to the testimony of state witness, Nathaniel Moore, are interrelated and will be addressed together. In the second assignment of error, defendant contends that, with an inadequate showing of surprise and affirmative damage per Evid.R. 607, it was error to permit the state, over objection, to attack the credibility of its own witness, Nathaniel Moore, by means of leading questions and a prior inconsistent statement. In his third assignment of error, defendant claims error in the trial court's ruling permitting Nathaniel Moore's taped statement to be played before the jury. Both of these assignments of error essentially relate to the application of Evid.R. 607.

Evidentiary rulings made at trial are customarily committed to the discretion of the trial court absent a showing that a substantial right of a party has been affected. (Staff Notes, Evid.R. 103; *State v. Lundy* [1987], 41 Ohio App.3d 163, 169, 535 N.E.2d 664, 671). The term "abuse of discretion" connotes more than an error of judgment, but rather implies an attitude of the court characterized as unreasonable, arbitrary, or unconscionable (*State v. Moreland* [1990], 50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898; *State v. Adams* [1980], 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148).

■ It is within the sound discretion of a trial court to permit the state to ask leading questions of its own witnesses (*Seley v. G.D. Searle & Co.* [1981], 67 Ohio St.2d 192, 21 O.O.3d 121, 423 N.E.2d 831; *State v. Madden* [1984], 15 Ohio App.3d 130, 15 OBR 221, 472 N.E.2d 1126). Accordingly, a trial court's decision permitting the use of leading questions on a party's own witnesses will not be reversed absent a showing of an abuse of discretion (*State v. Miller* [1988], 44 Ohio App.3d 42, 541 N.E.2d 105; *State v. Lewis* [1982], 4 Ohio App.3d 275, 4 OBR 494, 448 N.E.2d 487; Evid.R. 611[C]).

*Sub judice,* Nathaniel Moore's trial testimony on direct examination by the state differed substantially from the recorded interview he gave to Detective Cash taken shortly after the shooting of Carla Mathews. Said testimony apparently also differed from the version the prosecutor claims Nathaniel related to him the day prior to commencement of trial. During trial, this witness testified he furnished the weapon to defendant, and that defendant and the victim engaged in some form of physical scuffle just prior to the gun's discharge. In his prior interviews, Nathaniel had related that defendant always maintained control of the revolver, and that no struggle had occurred prior to the shooting. The prosecutor clearly had anticipated Nathaniel's trial testimony would be consistent with his prior interview testimony. His eyewitness versions of the events at issue were demonstrably inconsistent.

Evid.R. 607 provides that the party calling a witness may not attack the credibility of the witness by means of his prior inconsistent statement unless

surprise *and* affirmative damage are demonstrated (*State v. Holmes* [1987], 30 Ohio St.3d 20, 30 OBR 27, 506 N.E.2d 204).

■ The existence of surprise is a factual issue left to the trial court's discretion (*State v. Diehl* [1981], 67 Ohio St.2d 389, 21 O.O.3d 244, 423 N.E.2d 1112), and surprise may be shown if the witness's trial testimony is materially inconsistent with his prior written or oral statement, and counsel lacked reason to believe that the witness would recant when called to testify (*State v. Reed* [1981], 65 Ohio St.2d 117, 19 O.O.3d 311, 418 N.E.2d 1359; *State v. Stearns* [1982], 7 Ohio App.3d 11, 15, 7 OBR 12, 16–17, 454 N.E.2d 139, 143). The record *sub judice* adequately substantiates the trial court's factual determination of prosecution surprise (*State v. Cantlebarry* [1990], 69 Ohio App.3d 216, 590 N.E.2d 342, distinguished).

To establish the additional Evid.R. 607 element of affirmative damage, the party's witness must testify to facts which contradict, deny, or harm that party's trial position (*State v. Blair* [1986], 34 Ohio App.3d 6, 516 N.E.2d 240; *Stearns, supra*).

At the point in the trial at which Nathaniel was called as a state witness, the prosecution was attempting to prove the indictment, *i.e.*, aggravated murder. State eyewitness Keith Kendrick had just previously described to the jury what would be commonly considered an "execution style" shooting, and one committed with prior calculation and design. Witness Moore's subsequent testimony injected facts which, if believed by the jury, implied an accident or conduct done while defendant was in a fit of rage. The potential effect of this version of the shooting would tend to damage the state's case as to premeditation and therefore aggravated murder. Witness Moore's trial testimony could hardly be described as neutral. The state did not seek to impeach him until after the jury had heard his new, damaging testimony. Affirmative damage was also established.

We find no abuse of discretion in the trial court's rulings as to the use of leading questions and the application of Evid.R. 607 as same relate to the second assignment of error. Defendant's motion for a mistrial was properly denied.

■ Defendant further argues in the third assignment of error that the state's extended questioning of Nathaniel Moore and use of his prior taped statement in its entirety were improper impeachment procedures going beyond mere points of surprise. During the trial, defendant's counsel, in part at least, objected on the basis of Evid.R. 403(A).

The trial record reflects that defense counsel, on cross-examination of Nathaniel Moore, questioned him at some length about being coerced by the

police during their initial taped interview of him. Later, the state requested permission to play the entire tape recording of that interview to the jury for its consideration of the issue of intimidation, all of which related to the credibility and impeachment of that witness. Over defendant's objection, the tape was played to the jury. In overruling this objection, the trial court observed that defense counsel had "made an issue out of it" (the alleged coercion), and indicated a limited purpose instruction would be given the jury. Such instruction was later provided *twice*. The jury is presumed to follow those instructions (*State v. Ferguson* [1983], 5 Ohio St.3d 160, 5 OBR 380, 450 N.E.2d 265; *Pang v. Minch* [1990], 53 Ohio St.3d 186, 195, 559 N.E.2d 1313, 1321).

■ Evid.R. 403 rulings are likewise committed to the sound discretion of the trial court. Defendant opened up the issue of intimidation, and if the trial court erred, he invited it. We find no abuse of discretion in the use of the taped statement of Nathaniel Moore, and any error, even if not invited, was harmless.

Defendant's second and third assignments of error are not well taken.

■ Defendant's fourth and fifth assignments of error, each relating to aspects of the trial court's jury instructions, are also interrelated, and will likewise be treated together. The fourth assignment of error claims error in the trial court's refusal to charge the jury on the defense of accident. The fifth assignment of error alleges prejudicial error in the trial court's refusal to instruct on the lesser included offense of involuntary manslaughter, R.C. 2903.04(B), during the commission of the misdemeanor of negligent assault, R.C. 2903.14. We find both assignments of error to lack merit.

■ A homicide is not excusable on the basis of accident unless it appears from the evidence that at the time of the killing the offender was acting in a lawful manner and without negligence (*In re Jackson* [1975], 45 Ohio App.2d 243, 74 O.O.2d 384, 344 N.E.2d 162; *State v. Palmer* [Dec. 27, 1988], Franklin App. No. 87AP–1124, unreported, 1988 WL 142109). A person causing the death of another while engaged in unlawful activity is criminally responsible even if the firearm discharges accidentally, *State v. Thrash* (1952), 93 Ohio App. 458, 51 O.O. 196, 113 N.E.2d 675). *Sub judice*, defendant Moore was engaged in unlawful activity at the time of this shooting, and one essential element of the defense of accident is missing. The evidence did not support an instruction on accident, and the trial court did not err in declining to so instruct the jury (*State v. Cathcart* [July 10, 1990], Franklin App. No. 89AP–1118, unreported, 1990 WL 95402).

The trial court did instruct the jury on the lesser included offense of involuntary manslaughter predicated upon the misdemeanor of aggravated menacing (R.C. 2903.21). Involuntary manslaughter is a lesser included offense of aggravated murder, but it may only be charged when the evidence would reasonably support both an acquittal on the principal offense and a conviction on involuntary manslaughter (*State v. Thomas* [1988], 40 Ohio St.3d 213, 533 N.E.2d 286).

Negligent homicide is not a lesser included offense of murder or aggravated murder (*State v. Koss* [1990], 49 Ohio St.3d 213, 551 N.E.2d 970; *State v. Miller* [Aug. 30, 1990], Franklin App. No. 89AP-1347, unreported, 1990 WL 126299). Negligent assault is a complement to negligent homicide, and it requires that the offender act negligently because of a substantial lapse from due care. The evidence before us suggests that the conduct of defendant went beyond merely a substantial lapse from due care, but rather was purposeful and/or knowing. A negligent assault instruction would have been inconsistent with this evidence, and the trial court correctly refused defendant's requested instruction of involuntary manslaughter upon negligent assault (*State v. McCarthy* [Feb. 16, 1989], Franklin App. No. 88AP-772, unreported, 1989 WL 11938).

Accordingly, defendant's fourth and fifth assignments of error are not well taken.

In the sixth assignment of error, defendant attacks the sufficiency of the evidence to support a conviction for voluntary manslaughter. The test for determining the sufficiency of the evidence is whether reasonable minds could reach different conclusions on the issue of whether or not an accused is guilty beyond a reasonable doubt (*State v. Black* [1978], 54 Ohio St.2d 304, 8 O.O.3d 296, 376 N.E.2d 948). A reviewing court should not reverse a jury verdict when there is substantial evidence upon which the jury could reasonably find that all of the essential elements of an offense have been proved beyond a reasonable doubt (*State v. Seiber* [1990], 56 Ohio St.3d 4, 13, 564 N.E.2d 408, 418). The weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of facts (*In re Watson* [1989], 47 Ohio St.3d 86, 92, 548 N.E.2d 210, 216).

Our review of the record, in light of the above principles, suggests that the evidence does support the jury's verdict of voluntary manslaughter pursuant to R.C. 2903.03. Sufficient evidence was presented upon which a jury could find that defendant knowingly caused the victim's death.

Defendant's sixth assignment of error is not well taken.

■ In the seventh assignment of error, defendant claims the trial court abused its discretion in imposing sentence upon him. The record reflects that the trial court ordered and considered a presentence investigation report, expressly considered the sentencing factors under R.C. 2929.12, entertained argument from defense counsel upon relevant mitigating factors, and imposed a sentence within the limits of R.C. 2929.11(B)(1)(a) for an aggravated first degree felony with a firearm specification. The presence of mitigating factors does not control sentencing discretion (*State v. Crouse* [1987], 39 Ohio App.3d 18, 528 N.E.2d 1283).

■ Within the statutory limits of R.C. 2929.11(B)(1), a trial court has broad discretion in imposing a sentence (*State v. Henry* [1987], 37 Ohio App.3d 3, 10, 523 N.E.2d 877, 884; *State v. Lepley* [1985], 24 Ohio App.3d 237, 24 OBR 448, 495 N.E.2d 40; *State v. Williams* [1982], 7 Ohio App.3d 160, 162, 7 OBR 204, 206–207, 454 N.E.2d 1334, 1336).

Absent an abuse of discretion (defined *supra*), a sentence which is imposed within the statutory framework or limits will not be interfered with upon appeal (*Toledo v. Reasonover* [1965], 5 Ohio St.2d 22, 34 O.O.2d 13, 213 N.E.2d 179; *State v. Kroner* [1988], 49 Ohio App.3d 133, 134, 551 N.E.2d 212, 213; *Henry, supra,* 37 Ohio App.3d at 10, 523 N.E.2d at 884; *State v. Yontz* [1986], 33 Ohio App.3d 342, 343, 515 N.E.2d 1012, 1013). No abuse of discretion is demonstrated in the record *sub judice* as to the imposition of sentence on this defendant, and his seventh assignment of error fails (*State v. Davidson* [Nov. 20, 1990], Franklin App. No. 90AP–493, unreported, 1990 WL 179960).

Defendant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

JOHN C. YOUNG, J., concurs.

BOWMAN, P.J., concurs separately.

WILLIAM J. MARTIN, J., of the Carroll County Court of Common Pleas, sitting by assignment.

BOWMAN, Presiding Judge, concurring separately.

While I concur with the judgment of the majority in overruling defendant's first assignment of error, I find it necessary to further clarify the opinion in light of the Ohio Supreme Court's recent decision in *State ex rel. Clark v. Toledo* (1990), 54 Ohio St.3d 55, 560 N.E.2d 1313.

In *Clark,* the court held that R.C. 149.43 may be used by a criminal defendant in a post-conviction relief proceeding to gain access to information

otherwise not discoverable under Crim.R. 16 for the reason that R.C. 149.43 creates a substantive right which cannot be abridged by Crim.R. 16. In *Clark*, the court narrowly limited its ruling to post-conviction relief proceedings and specifically did not rule on the application of R.C. 149.43 to original trial proceedings, but did note, at 57, 560 N.E.2d at 1315:

"The narrow issue in this case is whether R.C. 149.43 is available to a criminal defendant in a post-conviction proceeding, and it has not been necessary to address the possible application of R.C. 149.43 to original trial proceedings.

"We share the concern that widespread use of R.C. 149.43 by criminal defendants might place an intolerable burden on the administration of criminal justice. This court cannot, however, eliminate this eventuality by ignoring the substantive right conferred upon all persons, including Clark, by R.C. 149.-43(B). Only the legislature can do so, as hereinabove indicated."

Thus, this opinion should not be interpreted as approving the trial court's conclusion that material which is not discoverable under Crim.R. 16(B)(2) is also, for that reason alone, not discoverable under R.C. 149.43.

Although the court below did not specifically determine that the information sought to be discovered fell under an exception to the R.C. 149.43 rule that public records should be made available, as the majority states, " * * * [w]hile the better practice might be for a trial court to identify the exemption it invokes in denying disclosure, nothing contained in R.C. 149.43 or the case law to date mandates such requirement. * * * " Here, the information sought to be discovered was reviewed *in camera* and the court determined it was not discoverable under either Crim.R. 16(B)(2) or R.C. 149.43. The trial court's analysis thus meets the inherent requirement of R.C. 149.43 that the court review the information sought to be disclosed before making its determination:

"Under R.C. 149.43 and *NBC, supra* [*State ex rel. National Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786], the trial court must scrutinize the records in question. If the trial court determines that the records in question are specific investigatory work product under R.C. 149.-43(A)(2)(c), or otherwise excepted from disclosure under R.C. 149.43(A)(2), or that the records in question were specifically compiled in reasonable anticipation of a criminal action or proceeding under R.C. 149.43(A)(4), then neither the media nor the criminal defendant would be entitled to the records. The trial court would redact that which was excluded." *Sanford v. Kelly* (1989), 44 Ohio App.3d 30, 34, 541 N.E.2d 124, 127.

Because *Clark* clearly indicates that its holding is intended to apply only where post-conviction relief is sought, and because the trial court appeared to

have conducted a review sufficient to satisfy the mandate of *Clark,* I would concur in the view of the majority that the trial court did not err in denying defendant's pre-trial R.C. 149.43 motion for disclosure of witness statements.