DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant Arvin Banaag appeals from his conviction of aggravated robbery with a firearm specification. This Court affirms the conviction, but reverses the sentence and remands for resentencing.
On October 7, 1998, two masked gunmen robbed the Quick Check convenience store in Wayne County, Ohio while two accomplices waited in the getaway vehicle. Other accomplices had supplied the firearms and ammunition for the robbery. Although the store clerk and other witnesses in the store were unable to identify the gunmen, the incident was recorded on videotape. By focusing their investigation on identifying the masks the gunmen wore, the police eventually concluded that the masks had been purchased at the Odd Lots store in Wooster. The Odd Lots' surveillance camera videotape revealed that, on the day of the robbery, Banaag and some of his accomplices purchased Halloween masks, gloves, and dark clothing.
Banaag was eventually identified as one of the gunmen by some of his accomplices. Although several of his accomplices apparently entered into plea bargains with the state, Banaag was tried on the charge of aggravated robbery with a firearm specification. The state's case against him consisted primarily of the Odd Lots videotape and the testimony of some of his accomplices. Following a jury trial, Banaag was convicted. He appeals, raising four assignments of error.
Banaag's first assignment of error is that the trial court erred in allowing the state to impeach Mark Yoder, one of its own witnesses, with his prior testimony. Evid.R. 804(B)(1) provides for the admission of a witness's prior testimony only if two requirements are satisfied: (1) the witness is "unavailable" and (2) the testimony qualifies as "former testimony" under the meaning of Evid.R. 804(B)(1). Banaag contends that neither of the requirements of the rule was satisfied here.
Evid.R. 804(A) defines "unavailability as a witness" to include, among other things, situations in which the declarant:
 (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement;
 (2) persists in refusing to testify * * * despite an order by the court to do so[.]
Banaag argues that Yoder should not have been declared "unavailable" under subsection (1) because he had no Fifth Amendment privilege to assert. Banaag apparently misunderstands the trial court's evidentiary ruling. The trial court did not find, as Banaag asserts, that Yoder was "unavailable" pursuant to Evid.R. 804(A)(1) due to his Fifth Amendment privilege.
Shortly after the state began its questioning of Yoder, he refused to testify, and attempted to "plead the fifth." The trial court immediately questioned the state about whether Yoder might have such a privilege to assert. Because the state indicated that Yoder had been granted immunity, the trial court ordered him to testify. Yoder continued to refuse to testify, however, so the trial court found him in contempt and sentenced him to ninety days in the Wayne County Jail. The trial court, consequently, declared Yoder "unavailable" pursuant to Evid.R. 804(A)(2), not Evid.R. 804(A)(1). This Court finds no error in the trial court declaring Yoder "unavailable" due to his refusal to testify despite the court's order that he do so.
Banaag next contends that, even if Yoder was unavailable as a witness, his prior testimony at the juvenile court bindover hearing did not qualify as "former testimony" within the meaning of Evid.R. 804(B)(1). Evid.R. 804(B)(1) defines former testimony as:
 [t]estimony given as a witness at another hearing of the same or a different proceeding * * * if the party against whom the testimony is now offered * * * had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia of reliability.
Banaag does not dispute that he had the opportunity to cross-examine Yoder at the bindover hearing. He contends, however, that he did not have a similar motive to develop his cross-examination at that stage of the proceedings because he did not know about Yoder's "deal" with the state at that time. Banaag cites no authority, and this Court knows of none, to support his argument that he had a "similar motive" to cross-examine Yoder only if he knew then that Yoder was cooperating with the state.
"[I]dentity of parties and identity of causes of action are not prerequisites to application of the rule. * * * Evid.R. 804(B)(1) merely requires a similar motive, not an identical motive, to develop the testimony." Whitaker v. Weinrich (Dec. 14, 1987), Butler App. No. CA86-12-179, unreported, citing 1 Weissenberger, Ohio Evidence (1995), § 804.24. To determine whether an opponent to former testimony had a similar motive to cross-examine the declarant, the focus is on the opponent's connection with the prior proceeding. Id. The similar motive requirement of Evid.R. 804(B)(1) "`operates to screen out those statements which, although made under oath, were not subject to the scrutiny of a party interested thoroughly in testing its validity.'" State v. McCormick (July 11, 1996), Jackson App. No. 95CA765, unreported, quoting United States v. Pizarro (C.A.7, 1983), 717 F.2d 336, 349. "`Accordingly, the similar motive requirement should be read to mean "motive to develop facts" or "motive to limit the weight to be accorded the prior testimony.'"McCormick, quoting 1 Weissenberger, Ohio Evidence (1995) 164, § 804.24.
Here, the former testimony was elicited in a prior proceeding in this same case less than three months earlier. Banaag's cross-examination of Yoder was extensive. In fact, his cross-examination of Yoder was far more detailed than the state's direct examination of him. As Yoder was an alleged accomplice who was implicating him in the robbery, Banaag's motive was to attack his credibility, which he did quite thoroughly. Banaag questioned Yoder about the specific details of the evening in question, attempting to discredit Yoder's recollection of the events. Banaag cross-examined Yoder with his prior statement to police, pointing to numerous inconsistencies between the prior statement and his testimony. Banaag also elicited an admission from Yoder that he had been drinking on the night of the robbery. Banaag was free to question Yoder about whether he had negotiated any deals with the state, but he apparently chose not to.
The record demonstrates that Yoder's former testimony was subject to extensive cross-examination by Banaag who had a similar, if not identical, motive to discount his credibility. Because Banaag fails to demonstrate that Yoder's former testimony was not properly admitted pursuant to Evid. R. 804(B)(1), his first assignment of error is overruled.
Banaag's second assignment of error is that the trial court erred by allowing the state to question a police officer about the prior inconsistent statement of one of its own witnesses. The witness, Korakam Simmavanh, was an alleged accomplice of Banaag who had implicated Banaag in his statement to police. When he testified, however, Simmavanh claimed that he was unable to remember the events surrounding the robbery. When the state attempted to refresh his memory with the prior statement, Simmavanh recanted it.
Banaag contends that the use of Simmavanh's prior inconsistent statement was an attempt by the state to impeach its own witness, in violation of Evid.R. 607.[1] Evid.R. 607 prohibits the use of prior inconsistent statements to impeach one's own witness absent a showing of surprise and affirmative damage. Surprise exists if the witness gives testimony that is materially inconsistent with his or her prior written or oral statements and if the party did not have reason to believe that the witness would provide inconsistent testimony. Dayton v. Combs
(1993), 94 Ohio App.3d 291, 299. Affirmative damage is established if the witness testifies to facts that contradict, deny, or harm the party's trial position. Id. The trial court's decision to allow impeachment of one's own witness with a prior inconsistent statement lies within its sound discretion. SeeState v. Moore (1991), 74 Ohio App.3d 334, 342.
The state explained to the trial court that it had expected Simmavanh to implicate Banaag, as he had in his statement to the police, as one of the gunmen who went into the Quick Check store. When Simmavanh testified, however, he first claimed a lack of memory and then directly recanted his prior statement to police. Simmavanh's failure to implicate Banaag was material to the state's case; by recanting his prior statement, Simmavanh contradicted the state's position. See Dayton, supra (Although a witness's lack of memory may not contradict the state's position, recanting a prior statement does). Therefore, this Court cannot say that the trial court abused its discretion when it allowed the state to ask the police officer about Simmavanh's prior statement. The second assignment of error is overruled.
Banaag's third assignment of error is that he was denied effective assistance of trial counsel. In order to establish ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, certiorari denied (1990),497 U.S. 1011, 111 L.Ed.2d 830. There are countless ways for an attorney to provide effective assistance in a given case and this Court must give great deference to counsel's performance. SeeStrickland v. Washington (1984), 466 U.S. 668, 689,80 L.Ed.2d 674, 694. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Id.
Banaag alleges that his trial counsel committed error in the following respects: (1) by failing to object to hearsay testimony about Banaag having a gun on the day of the robbery, (2) by failing to object to the state's impeachment of its own witness, (3) by failing to request a jury instruction on accomplice testimony, (4) by failing to impeach the store clerk with her prior inconsistent testimony at the bindover hearing, and (5) by asking another witness whether the assailant's skin was lighter than Banaag's. This Court will address each allegation in turn.
Banaag's first alleged error is that his trial counsel failed to object to the state's examination of Brandon Lehman when Lehman testified that Banaag had a nine-millimeter handgun "from what I was told." Lehman was the state's witness and the other alleged gunman, who initially claimed to have little memory of the robbery because he was "cracked out" at the time. As his testimony developed, however, he recalled more and more details. Although he first stated that he "was told" that Banaag had a gun, he later testified from his own memory that Banaag did have a gun and that Banaag fired it while the two were fleeing the robbery scene.
Therefore, even if counsel had objected to Lehman's hearsay testimony and the trial court had sustained the objection, the evidence would have come in through Lehman's testimony from his own recollections. In addition to the later recollection by Lehman, other witnesses testified that Banaag was one of the gunmen at the robbery. Therefore, Banaag has not demonstrated that, but for counsel's alleged error, the outcome of the trial would have been otherwise.
The next alleged error of counsel is likewise unfounded. As this Court explained in its discussion of Banaag's second assigned error, the state's impeachment of its own witness was not improper. Thus, trial counsel did not err by failing to raise such an objection at trial.
The third instance of alleged ineffectiveness was trial counsel's failure to request a jury instruction on the weight to be given accomplice testimony. R.C. 2923.03(D) provides that if an alleged accomplice testifies against a defendant, the trial court is required to instruct the jury substantially as follows:
 The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.
In this case, the trial court failed to instruct the jury on the credibility of accomplice testimony and Banaag's trial counsel raised no objection.[2] Even if the failure to give such an instruction was error, however, Banaag has failed to demonstrate that the outcome of his trial would have been different if trial counsel had raised an objection.
The trial court gave an extensive general instruction on witness credibility:
 Now, to determine the credibility of the witnesses apply the tests of truthfulness which you are accustomed to applying in your daily lives. You may consider the appearance of the witnesses upon the stand, the reasonableness of the testimony, the opportunity each witness had to see, hear and know things concerning which he or she testified, accuracy of memory, frankness or lack of it, intelligence, interest and bias if any together with all the facts and circumstances surrounding the testimony. Applying these tests you will assign to each witness such weight as you deem proper. You are not required to believe the testimony of any witness simply because he or she was under oath. You may believe or disbelieve all or any part of the testimony of any witness.
 It is your exclusive duty to determine what testimony to believe and what testimony not to believe.
Banaag's trial counsel thoroughly cross-examined each witness who implicated Banaag either at trial or at the prior juvenile bindover hearing, attacking their credibility and attempting to discredit their identification of Banaag as one of the gunmen. See State v. Wynn (Apr. 28, 1999), Lorain App. No. 97CA006968, unreported. Moreover, the trial testimony of some of the accomplices, including those who testified for the state, was favorable to Banaag. It may have been sound trial strategy not to seek an instruction that would also serve to discredit the favorable portions of the accomplice testimony. Accordingly, this challenge is without merit. See, also, State v. Wilson (July 31, 1998), Hamilton App. No. C-970397, unreported.
The final two alleged errors by trial counsel involve the cross-examination of the Quick Check store clerk and another witness who was present in the store during the robbery. Because neither of these witnesses could identify Banaag as one of the gunmen, trial counsel attempted a strategy of eliciting testimony that the taller gunman, whom some accomplices had identified as Banaag, actually had a fairer complexion than Banaag. Banaag faults trial counsel: (1) for failing to pursue this strategy during his cross-examination of the store clerk, and (2) for unsuccessfully pursuing this line of questioning with the other witness.
The extent to which trial counsel cross-examines the state's witnesses is largely a matter of trial strategy and does not constitute a denial of effective assistance of counsel. State v.Flors (1987), 38 Ohio App.3d 133, 139; State v. Clayton
(1980), 62 Ohio St.2d 45, 49, certiorari denied (1980), 449 U.S. 879,66 L.Ed.2d 102. Because Banaag fails to demonstrate that any of the alleged deficiencies on the part of his trial counsel deprived him of a fair trial, his third assignment of error is overruled.
Banaag's fourth assignment of error is that the trial court failed to follow statutory requirements when it sentenced him. Specifically, he contends that, among other things, the trial court failed to make sufficient findings when it imposed more than the minimum sentence for his armed robbery conviction. R.C.2929.14(B) provides that, before a court can impose more than the minimum sentence authorized for an offense on a felony offender who has never served a prison term, it must find "on the record" that the shortest term will either demean the seriousness of the offense or will not adequately protect the public from future crime by the offender or others. The Ohio Supreme Court has held that the court must affirmatively indicate on the record "that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." State v. Edmonson
(1999), 86 Ohio St.3d 324, 326.
Although the record of the sentencing hearing suggests that Banaag had a prior criminal record, it does not reveal any specific convictions or juvenile adjudications, nor does it indicate whether any period of confinement, much less a "prison term" was served.[3] Thus, before the trial court imposed more than the minimum term for this offense, it was required to find on the record that the minimum sentence would either demean the seriousness of the offense or that it would fail to adequately protect the public. The trial court failed to make either of the sanctioned findings on the record either at the sentencing hearing or in its journalization of Banaag's conviction and sentence. Absent such findings, the court was without authority to sentence Banaag to more than the minimum term for his offense. Banaag's fourth assignment of error is sustained and the case is remanded for re-sentencing consistent with the statutory requirements.
Judgment affirmed in part and reversed in part and thecause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to both parties equally.
Exceptions.
DONNA J. CARR, FOR THE COURT
BAIRD, P.J., SLABY, J., CONCUR.
[1] Although Banaag failed to raise this objection at trial, this Court will address the merits of the alleged error because the trial court raised the issue sua sponte. Moreover, because Banaag contends through his third assignment of error that trial counsel was ineffective for failing to raise such an objection, a disposition of the merits is necessary.
[2] The record does not reveal whether trial counsel requested such an instruction because no written requests for jury instructions appear in the record and the trial court spoke to counsel off the record immediately before instructing the jury.
[3] The state made no attempt to point to any such evidence in the record; in fact, it failed to file a brief in this appeal.