OPINION *Page 2 
{¶ 1} Appellant, Michael Horton, was indicted by the Stark County Grand Jury and charged with one count of murder, in violation of R.C. § 2903.02(A) for the shooting death of Rick E. Joiner. The grand jury included two firearm specifications in the indictment for discharging a firearm from a motor vehicle, R.C. § 2941.146 and using a firearm to facilitate a murder, R.C. § 2941.145. The indictment also contained charges of having a weapon while under a disability and knowingly discharging a firearm while in a motor vehicle, R.C. § 2923.13(A) (3), R.C. § 2923.16(A). A jury found appellant guilty of the crimes as charged in the indictment including the crime of murder.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 11, 2006, 18-year-old April Kienzle was celebrating her birthday. A party for Kienzle and her friend, Amanda, was planned at a house on 15th Street in the City of Canton occupied by Amanda's brother. Kienzle arrived at the party about 2:30 p.m. to help set up. There was a mix of people at the party — "older folk, younger folks, middle-age folks." Among the partygoers were the Delgado brothers, James and Jesse, Perry Carlisle, Coty Cricks and Ricky Joiner.
 {¶ 3} Later that day, appellant called Kienzle on her cell phone and asked her to come meet him. Kienzle dated appellant for about a year before the party. Kienzle told appellant she could not meet him because she was at the party drinking beer and doing shots. Appellant then told Kienzle he wanted to see her. Kienzle checked with Amanda, Joiner, the Delgado Brothers and others, asking them if they had a problem if Mike came over?" Kienzle then told appellant he could come over, that "nothing was going to happen" and gave him directions to the party. *Page 3 
 {¶ 4} Appellant asked his friend, Mario Carbenia, if he would drive him to the party offering him $10.00 for gas. Carbenia had use of his cousin's green Ford Explorer that day and agreed to take appellant to the party. Appellant took a .40 caliber semiautomatic handgun with him to the party, tucked in his pants at the belt line. On the way over to the party, Carbenia and appellant were lost and called Kienzle for additional directions. By the time the pair arrived at the party it was dark. Carbenia pulled the Explorer over to the south side of the road across from the party house. Carbenia left the Explorer's motor running. There were 10 to 14 people on the porch. Appellant called Kienzle on his cell phone and told her he was outside. Kienzle came out of the house with two other girls and went to the passenger side of the Explorer next to the curb to talk to appellant. Appellant remained in the car and the couple exchanged greetings. Kienzle saw the handgun tucked in appellant's pants and told him "if he was going to start anything, he could go ahead and leave because we weren't having that." One of the girls standing by the Explorer with Kienzle left and went back into the home.
 {¶ 5} While Kienzle and appellant were talking, Coty Cricks came up to the driver's side window, looked in and walked over to Kienzle, saying "[I]s this who I'm supposed to be holding Ricky back from?" Hearing this, Carbenia tapped appellant on the chest saying, "something's wrong, let's go." Appellant and Carbenia did not leave.
 {¶ 6} Joiner, Jesse Delgado and Perry Carlisle went out to the Explorer. Joiner ran up to the passenger side window and reached inside the vehicle. Kienzle heard some yelling and then a gunshot. Joiner fell to the ground and the Explorer pulled off.
 {¶ 7} After the shooting, there was a lot of screaming and panic — "millions of people running around and screaming. Kienzle and her girlfriend left in a car and went *Page 4 
to the home of Carol Kemp. They were hysterical, screaming and saying, "we just saw somebody get shot in the head." Kemp called 911. A detective called her back and asked her to send the girls down to the police station to make a statement. Kemp overheard Kienzle talking on her cell phone saying, "It was my fault because I got him there."
 {¶ 8} The Delgado brothers, Cricks and Carlisle went to the aid of Joiner. They were holding Joiner who had been shot in the left cheek. Cody Cricks put a shirt over Joiner's face and put pressure on the gunshot wound. The paramedics were dispatched at 11:32 pm. They found Joiner lying on the ground with a gunshot would to his head under his left eye. About 15 minutes later, they arrived at Aultman Hospital. Joiner was pronounced dead of a gunshot wound in the emergency room of the hospital.
 {¶ 9} After appellant shot Joiner, Carbenia "took off" in the Explorer. When they got down the street, Carbenia testified that there was a clear beer bottle on appellant's lap. Appellant threw the bottle out the window. Carbenia asked appellant what happened to the expelled bullet jacket and appellant told him it was still in the gun. Appellant took off his shirt and directed Carbenia to the home of his girlfriend in East Canton, Anna Rukavina. Appellant and Carbenia arrived around midnight. Appellant took Rukavina in the bedroom and told her that he thought he killed someone. Appellant told her that the truck he was riding in was surrounded by fifteen people and that he shot out the window to back everyone away from the truck. He was wearing a grill on his front teeth and complained that it felt different. Appellant told Rukavina that he had been hit in the mouth with a beer bottle. *Page 5 
 {¶ 10} Appellant stayed the night with Rukavina. The next morning about 5:30 a.m., Rukavina received a call from Joiner's cousin who told her that appellant had killed Joiner. Rukavina later received calls that there were people out looking for appellant. Rukavina told appellant about the telephone calls.
 {¶ 11} A day after the shooting, appellant, accompanied by his mother, turned himself in to authorities at the Stark County Sheriffs Department.
 {¶ 12} Detective Vic George of the Canton Police Department was assigned to investigate the shooting of Joiner. George interviewed witnesses and learned the name of a suspect, Michael Horton, Jr. Detective George learned that appellant had turned himself in and went out to the Stark County Jail to interview him. Detective George observed no injuries on appellant and appellant complained of none. Appellant told Detective George it [the shooting] wasn't his fault — that it was an accident. Appellant further told Detective George that Joiner struck him in the face with a clear colored beer bottle. When that happened, he pulled a gun out of the waistband of his pants with his left hand and drew his arms across his chest to fire it out the window to scare off the person. Detective George asked appellant about the gun. Appellant responded that it was in a safe place.
 {¶ 13} Detective George was unable to locate the beer bottle where appellant said he threw it. The gun was not found.
 {¶ 14} The Chief Deputy Coroner, P. S. Murthy, performed an autopsy on Joiner's body. Doctor Murthy noted that Joiner was an 18-year-old "very healthy young man." Doctor Murthy first observed a lot of blood and a gunshot wound in the region of the left face. He saw a grazing wound on the left side of the nostril. Doctor Murthy also *Page 6 
observed a prominent area of stippling on the face. Doctor Murthy described stippling as "when a firearm is discharged, burnt powder and then unburnt power is discharged from the firearm; and this unburnt gunpowder particles make small punctate reddish brown marks on the body and the skin surface." There were also areas of stippling on Joiner's right forearm. The presence of stippling can indicate how far the muzzle of the gun was from the skin surface. From the presence of the stippling, Doctor Murthy was able to opine that the gun was fired 1-1/2 to 3 feet from Joiner's face and cheek. Doctor Murthy also opined that the stippling on Joiner's right forearm was caused when Joiner attempted to deflect the gun.
 {¶ 15} Based on his examination of the brain, Doctor Murthy was able to determine that the bullet traveled through Joiner's skull essentially pulverizing it-pulpefaction. The brain was torn into small pieces and became a soupy type of material. Joiner died from hemorrhaging of the brain caused by a gunshot wound to the face.
 {¶ 16} Doctor Murthy was able to collect some bullet fragments from the brain; the lead core of the bullet, two large fragments and the copper jacket. Those fragments were turned over to the Stark County Crime Laboratory for analysis.
 {¶ 17} Dennis Florea, firearms expert, examined the bullet fragments and copper jacket. From that examination, Florea was able to determine that the bullet was fired from a firearm having six lands and grooves with a right twist. Glock Firearms, Heckler Koch Firearms, Israeli Military Industries or IMI, and Kahr Firearms produce such a firearm. Florea examined the coroner's pictures of Joiner's body and noted the stippling on his face. Florea opined that the muzzle of the firearm was held 12 to 18 inches from Joiner's cheek when it was fired. *Page 7 
 {¶ 18} Prior to trial, appellant plead guilty to having weapons while under disability and sentencing was deferred until the end of the trial.
 {¶ 19} At the conclusion of the evidence, appellant requested instructions on self-defense, negligent homicide, reckless homicide and involuntary manslaughter. Those requests were denied by the trial court.
 {¶ 20} The jury found appellant guilty of the crimes as charged in the indictment including the crime of murder.
 {¶ 21} On February 20, 2007, appellant returned to the trial court and was sentenced to fifteen years to life on the count of murder, a five-year term for the merged firearm specifications, a five year term for having a weapon while under a disability and an eighteen month prison term for improper handling of a firearm. Appellant received an aggregate prison sentence of life with parole eligibility in twenty-five years.
 {¶ 22} Appellant has timely appealed, raising the following five assignments of error:
 {¶ 23} "I. THE TRIAL COURT'S FINDING OF GUILT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 24} "II. THE APPELLANT WAS DENIED HIS RIGHTS TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE.
 {¶ 25} "III. THE APPELLANT WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS BY THE MISCONDUCT OF THE PROSECUTOR.
 {¶ 26} "IV. THE TRIAL COURT ERRED BY REFUSING TO INSTRUCT THE JURY AS TO APPROPRIATE LESSER INCLUDED OFFENSES. *Page 8 
 {¶ 27} "V. THE TRIAL COURT ABUSED ITS DISCRETION BY IMPROPERLY IMPEDING THE APPELLANT'S ABILITY TO CROSS EXAMINE THE STATE'S WITNESSES."
 I. {¶ 28} In his First Assignment of Error, appellant maintains that his conviction for Murder is against the weight and sufficiency of the evidence. We disagree.
 {¶ 29} Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, State v. Jenks (1991), 61 Ohio St. 3d 259.
 {¶ 30} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.
 {¶ 31} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. *Page 9 
 {¶ 32} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus;State v. Miller (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 33} In the case at bar, appellant was convicted of the offense of murder in violation of R.C. 2903.02(A), which states: "No person shall purposely cause the death of another * * *." To find the appellant guilty of Murder as charge in the case at bar, the jury would have to find that the appellant purposely caused the death of another. (4T. at 882).
 {¶ 34} R.C. 2901.22 Culpable mental states, provides:
 {¶ 35} "(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 36} "Intent need not be proven by direct testimony. State v.Lott (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, 302. Instead, intent to kill `may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal *Page 10 
wound.' State v. Robinson (1954), 161 Ohio St. 213, 53 O.O. 96,118 N.E.2d 517, at paragraph five of the syllabus; State v. Eley (1996),77 Ohio St.3d 174, 180, 672 N.E.2d 640, 648". State v. Stallings (2000),89 Ohio St.3d 280, 290, 2000-Ohio-159, 731 N.E.2d 159,171.
 {¶ 37} The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death. State v. Mackey (1999), Cuyahoga App. No. 75300, dismissed, appeal not allowed (2000), 88 Ohio St.3d 1496,727 N.E.2d 920, citing State v. Widner (1982), 69 Ohio St.2d 267,431 N.E.2d 1025 (finding purpose to kill in passenger's firing gun at individual from moving vehicle); State v. Dunlap (1995), 73 Ohio St.3d 308, 316,652 N.E.2d 988, certiorari denied (1996), 516 U.S. 1096, 116 S.Ct. 1096,133 L.Ed.2d 765. State v. Banks, 10th Dist. No. 01 AP-1179, 2002-Ohio-3341 at ¶ 24.
 {¶ 38} "[T]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." State v. Turner (1997), Franklin App. No. 97APA05-709, dismissed, appeal not allowed (1998), 81 Ohio St.3d 1496,691 N.E.2d 1058 (finding sufficient evidence of intent to kill in firing a gun from an automobile at a group of individuals), quoting State v. Brown (1996), Cuyahoga App. No. 68761, dismissed, appeal not allowed,77 Ohio St.3d 1468, 673 N.E.2d 135; see, also, State v. Smith (1993),89 Ohio App.3d 497, 501, 624 N.E.2d 1114 (finding that pointing a gun at a group of people less than twenty feet away and shooting at least one shot could be used by the trier of fact as proof of intention to kill).Banks, supra, at ¶ 26. *Page 11 
 {¶ 39} In the case at bar, the evidence is undisputed that appellant fired a .40 caliber, semi-automatic handgun in the direction of at least one person who was standing, at the most, three feet away from the barrel of the gun. (2T. at 242).
 {¶ 40} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of murder.
 {¶ 41} We hold, therefore, that the state met its burden of production regarding each element of the crime of murder and, accordingly, there was sufficient evidence to support appellant's conviction.
 {¶ 42} Although appellant cross-examined the State's witnesses in an attempt to show the inconsistencies in the various statements and further in an attempt to demonstrate that the firing of the gun was accidental, or in an attempt to frighten away his alleged attacker, to contradict the State's inference that he purposely caused the victim's death, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence".State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citingState v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964), 176 Ohio St. 61,67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992), 79 Ohio App.3d 667, *Page 12 
607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence.State v. Jenks (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 43} We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant purposely caused the death of another. R.C. 2903.02(A). Accordingly, appellant's conviction for murder was not against the manifest weight of the evidence.
 {¶ 44} Appellant's first assignment of error is overruled.
 II. {¶ 45} In his Second Assignment of Error, appellant maintains he received ineffective assistance of counsel. We disagree.
 {¶ 46} A claim for ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 47} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142, 538 N.E.2d 373. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any give case, a *Page 13 
strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 48} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. Lockhart v. Fretwell (1993), 506 U .S. 364, 370, 113 S.Ct. 838,122 L.Ed.2d 180.
 {¶ 49} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court" * * * need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143,538 N.E.2d 373, quoting Strickland at 697. As such, we will direct our attention to the second prong of the Strickland test.
 {¶ 50} Difficulty Hearing.
 {¶ 51} Appellant first contends that his counsel was speaking too loudly at side bar conferences and further was unable to hear the testimony of certain witnesses for the prosecution.
 {¶ 52} Appellant has failed to demonstrate prejudice from counsel speaking too loudly at any side bar conference. Appellant has failed to demonstrate that the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. Lockhart v. Fretwell (1993), 506 U .S. 364, 370, 113 S.Ct. 838,122 L.Ed.2d 180. *Page 14 
 {¶ 53} The record reflects that many of the instances cited by appellant were not the result of his attorney's inability to hear. Rather, at one point, the trial court was adjusting the witness' microphone [2T.at 401-402]; counsel requested the court, at side bar, repeat a witness' answer to a question posed by one of the jurors [2T. at 451-452]; the trial court noted that the witness's voice was tailing off and requested the witness speak up [3T. at 590]; and the trial court sua sponte requested witness' speak into the microphone. [3T. at 699]. Accordingly, appellant has failed to demonstrate that the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. Lockhart v. Fretwell (1993), 506 U .S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180.
 {¶ 54} Confusion.
 {¶ 55} Appellant next argues that he was denied effective assistance of counsel because his attorney seemed confused.
 {¶ 56} Appellant first contends that his attorney conversed in German with a potential juror. The record reflects that the juror in question was a retired teacher who was born and raised in Europe. (1T. at 131-132). Nothing in the record suggests that counsel's actions were the result of confusion.
 {¶ 57} Appellant's further argues counsel seemed confused concerning the numbers assigned to the potential jurors during voir dire. Appellant does not separately assign error to counsel's conduct of voir dire; nor does appellant contend that any juror was unqualified or otherwise not suited to serve on the jury. Accordingly, appellant has failed to demonstrate that the result of the trial was unreliable or the proceeding *Page 15 
fundamentally unfair because of the performance of trial counsel.Lockhart v. Fretwell (1993), 506 U .S. 364, 370, 113 S.Ct. 838,122 L.Ed.2d 180.
 {¶ 58} Appellant next points to instances of mis-speaking the name of a witness or confusing James with Jesse Delgado. These were isolated instances, which are not unusual during the course of a difficult trial.
 {¶ 59} Appellant next argues that his counsel displayed confusion concerning the trial court's rulings on objections. Appellant's contention that counsel did not pursue a line of questioning concerning whether April Kienzle had called appellant on the night in question because he was confused by the trial court's rulings is not borne out by the record. It is clear from the record that Kienzle stated that she did not remember whether she had called appellant the night in question. Rather than abandoning the line of questioning as appellant suggests, trial counsel took a different approach to the subject by rephrasing the questions concerning Kienzle use of her cell phone to contact appellant. (2T. at 429-431).
 {¶ 60} Appellant's contentions concerning counsel's requests for jury instructions is feckless in light of the trial court's refusal to consider any offenses other than those charged in the indictment. (3T. at 819-820; 822-825).
 {¶ 61} Failure to review witness statements
 {¶ 62} Appellant next claims ineffective assistance of counsel because his attorney failed to ask to review prior statements of the State's witness pursuant to Crim. R. 16(B) (1) (g). Appellant's argument is misplaced. Appellant's trial counsel was given the transcripts of taped statements of Mario Carbenia, Jessie Delgado, and James Delgado during pre-trial discovery. Further counsel was given an opportunity to *Page 16 
examine the statement of April Kienzle prior to cross-examination. Accordingly, appellant's contention that counsel was ineffective because he failed to move pursuant to Crim. R. 16 (B) (1) (g) to examine the witness' statements is frivolous.
 {¶ 63} Preoccupation
 {¶ 64} Appellant finally contends that counsel's sidebar remark prior to the trial court's adjournment for the day that he was going to the jail to see another client demonstrates that his counsel was preoccupied with his need to see other client's during the course of appellant's trial.
 {¶ 65} Counsel's remark came at the end of the day. Subsequent to the remark, appellant's counsel made a request for an instruction on accident, which the trial court denied. (3T. at 823). Further, the trial court issued its ruling upon what jury instructions would be given and adjourned for the day. (Id. at 823-825). Accordingly, appellant's argument that counsel's statement indicated his need to wrap-up discussions so he could be on his way is frivolous.
 {¶ 66} We find no evidence to suggest that appellant's counsel was preoccupied with other clients during the course of appellant's jury trial. Accordingly, appellant has failed to demonstrate that the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel. Lockhart v. Fretwell
(1993), 506 U .S. 364, 370, 113 S.Ct. 838, 122 L.Ed.2d 180.
 {¶ 67} Appellant has failed to demonstrate deficient performance or prejudice-in other words, "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." States v. Bradley, supra, paragraph three of the syllabus. *Page 17 
 {¶ 68} Appellant's second assignment of error is overruled in its entirety.
 III. {¶ 69} In his Third Assignment of Error appellant contends that the prosecutor engaged in misconduct by making improper comments during closing argument, by leading a witness and eliciting inadmissible testimony. We disagree.
 {¶ 70} A prosecutor is entitled to a certain degree of latitude in closing arguments. State v. Liberatore (1982), 69 Ohio St.2d 583, 589,433 N.E.2d 561. Thus, it falls within the sound discretion of the trial court to determine the propriety of these arguments. State v.Maurer (1984), 15 Ohio St.3d 239, 269, 473 N.E.2d 768. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge, 75 Ohio St.3d 136, 141, 1996-Ohio-227. Furthermore, "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." Donnelly v.DeChristoforo (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 40 L.Ed.2d 431.
 {¶ 71} In the case at bar, appellant points only to one (1) statement by the prosecutor as denying him a fair trial. Appellant contends that the statement "people only carry guns for one reason, to use them" inferred to the jury that appellant had premeditated the murder of the decedent. (Appellant's Brief at 19). Appellant has failed to demonstrate that it is clear beyond a reasonable doubt that, absent the prosecutor's single comment, the jury would not have found the defendant guilty.State v. Benge, 75 Ohio St.3d 136, 141, 1996-Ohio-227. The uncontroverted evidence established that appellant had a loaded .40 caliber semiautomatic handgun tucked into the waist of his *Page 18 
pants when he arrived at the party. Further appellant has never denied firing the weapon. We find the prosecutor's single, isolated statement does not compel the conclusion that appellant acted with premeditation.
 {¶ 72} Appellant next contends that during the testimony of April Kienzle the State used leading questions. Appellant does not point to any question or series of questions; nor does appellant elucidate upon how the questioning caused prejudiced. A review of the testimony reveals no leading questions that deprived appellant of a fair trial.
 {¶ 73} Finally, appellant contends that the prosecutor elicited a statement that the decedent had accused appellant of stealing money from him. (3T. at 515). The trial court overruled appellant's objection on the basis that appellant had opened the door to the testimony by alleging that appellant had been lured to the party. (Id. at 517). The testimony cannot be said to be inherently prejudicial, as it would provide a motive for the decedent to attack appellant with a beer bottle.
 {¶ 74} Appellant has failed to establish that beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. State v. Benge, 75 Ohio St.3d 136, 141,1996-Ohio-227.
 {¶ 75} Appellant's third assignment of error is overruled in its entirety.
 IV. {¶ 76} In his Fourth Assignment of Error, appellant contends that the trial court erred in failing to give his requested jury instructions. More specifically, appellant contends that the trial court erred in refusing to instruct the jury regarding negligent *Page 19 
homicide, voluntary manslaughter, aggravated assault, accident and self-defense. We disagree.
 {¶ 77} "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." State v. Comen (1990), 50 Ohio St. 3d 206, paragraph two of the syllabus. If a requested instruction contain a correct, pertinent statement of the law and is appropriate to the facts, the instruction must be included, at least in substance. State v.Nelson (1973), 36 Ohio St. 2d 79, paragraph one of the syllabus. However, the corollary of this maxim is also true. It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. Riley v. Cincinnati (1976),46 Ohio St.2d 287, 75 O.O.2d 331, 348 N.E.2d 135; Murphy v. CarrolltonManufacturing Co. (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832. "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of an * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." Feterle v.Huettner (1971), 28 Ohio St.2d 54, 275 N.E.2d 340, at syllabus;Murphy v. Carrollton Manufacturing Co., supra; State v. Coleman, 6th Dist. No. S-02-41, 2005-Ohio-318 at ¶ 12.
 {¶ 78} "Ohio law permits a trier of fact to consider three types of lesser offenses when determining a defendant's guilt: `(1) attempts to commit the crime charged, if such an attempt is an offense at law; (2) inferior degrees of the indicted offense; or (3) lesser included offenses.' State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph one of the syllabus, construing R.C. 2945.74 and Ohio Crim.R. 31(C)". *Page 20 Shaker Heights v. Mosely, 113 Ohio St.3d 329, 332, 2007-Ohio-2072
at ¶ 10, 865 N.E.2d 859, 862-863.
 {¶ 79} In determining whether an offense is a lesser-included offense of the charged offense, "`the evidence presented in a particular case is irrelevant to the determination of whether an offense, as statutorily defined, is necessarily included in a greater offense.'" State v.Barnes (2002), 94 Ohio St.3d 21, 26, 759N.E.2d 1240, quoting State v.Kidder (1987), 32 Ohio St.3d 279, 282, 513 N.E.2d 311; see, also,State v. Koss (1990), 49 Ohio St.3d 213, 218-219, 551 N.E.2d 970. However, the evidence in a particular case is relevant in determining whether a trial judge should instruct the jury on the lesser-included offense. If the evidence is such that a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser-included offense, then the judge should instruct the jury on the lesser offense. State v. Shane (1992),63 Ohio St.3d 630, 632-633, 590 N.E.2d 272.
 {¶ 80} Negligent Homicide
 {¶ 81} Appellant contends that the trial court erred in failing to give an instruction on Negligent Homicide. In State v. Koss (1990),49 Ohio St.3d 213, 551 N.E.2d 970, the Ohio Supreme Court held that negligent homicide is not a lesser included offense of murder. Id. at paragraph four of the syllabus. The Court reached this conclusion on the basis that negligent homicide is not always and necessarily included in murder because one can purposely cause the death of another by means other than by a deadly weapon or dangerous ordnance. Id. at 219,551 N.E.2d 970. Therefore, based upon the Koss decision, we reject appellant's argument that negligent homicide is a lesser-included *Page 21 
offense of murder. State v. Glagola, 5th Dist. No. 2003CA00006, 2003-Ohio-6018 at ¶ 19.
 {¶ 82} Accordingly, the trial court did not err in refusing to instruct the jury on Negligent Homicide.
 {¶ 83} Voluntary Manslaughter
 {¶ 84} Appellant further contends that error occurred when the trial court failed to instruct the jury on the lesser offense of voluntary manslaughter. Voluntary manslaughter is defined in R.C. 2903.03(A):
 {¶ 85} "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another[.]"
 {¶ 86} Voluntary manslaughter is not a lesser-included offense of murder, but rather is an inferior degree of murder. State v. Tyler
(1990), 50 Ohio St.3d 24, 36. Nonetheless, when determining whether an instruction on voluntary manslaughter should have been given, we apply the same test utilized when determining whether an instruction on a lesser-included offense should have been given. State v. Shane (1992),63 Ohio St.3d 630, 632. An instruction on voluntary manslaughter is appropriate when "the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." Id.
 {¶ 87} "Before giving a jury instruction on voluntary manslaughter in a murder case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an *Page 22 
instruction." Shane, at paragraph one of the syllabus. "The trial judge is required to decide this issue as a matter of law, in view of the specific facts of the individual case. The trial judge should evaluate the evidence in the light most favorable to the defendant, without weighing the persuasiveness of the evidence." Id. at 637, citingState v. Wilkins (1980), 64 Ohio St.2d 382, 388. "An inquiry into the mitigating circumstances of provocation must be broken down into both objective and subjective components." Shane, at 634.
 {¶ 88} When determining whether provocation was reasonably sufficient to induce sudden passion or sudden fit of rage, an objective standard must be applied. Id. "For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control." Id. at 635. Thus, the court must furnish "the standard of what constitutes adequate provocation, i.e., that provocation which would cause a reasonable person to act out of passion rather than reason." (Citations omitted.) Id. at 634, fn. 2. "If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction." Shane, at 364. The subjective component of the analysis requires an assessment of "whether this actor, in this particular case, actually was under the influence of sudden passion or in a sudden fit of rage." Id. "Fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." State v. Mack (1998), 82 Ohio St.3d 198, 201.
 {¶ 89} The trial court should have given an instruction on voluntary manslaughter if the evidence presented at trial demonstrated that appellant had killed Mr. Joinder *Page 23 
while under the influence of a sudden passion or fit of rage caused by provocation from Mr. Joinder that was serious enough to incite him into using deadly force. In this case, even if appellant has demonstrated that an objective basis for provocation existed-e.g. being hit in the face with a beer bottle-we find the record devoid of any evidence to demonstrate that appellant actually was under the influence of sudden passion or in a sudden fit of rage. Rather, he informed the police that the shooting was an accident as he, appellant, fired the gun in an attempt to scare off the person. [3T. at 539].
 {¶ 90} Based on the foregoing, we conclude that the trial court did not err in not instructing the jury on the issue of voluntary manslaughter.
 {¶ 91} Aggravated Assault
 {¶ 92} Appellant further contends that error occurred when the trial court failed to instruct the jury on the offense of aggravated assault.
 {¶ 93} It appears that appellant may be attempting to argue that the trial court should have given an instruction on Involuntary Manslaughter as opposed to Aggravated Assault. [3T. at 811-814].
 {¶ 94} Pursuant to R.C. 2903.04(A), a person commits involuntary manslaughter when he causes the death of another as proximate result of committing or attempting to commit a felony. Appellant argues that the jury could have found that shooting the decedent constituted aggravated assault pursuant to R.C. 2903.12(A)(1). This provision states that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall *Page 24 
knowingly:(1) Cause serious physical harm to another or to another's unborn shall cause physical harm to another."
 {¶ 95} As noted in our discussion concerning the inferior offense of voluntary manslaughter, supra even if appellant has demonstrated that an objective basis for provocation existed-e.g. being hit in the face with a beer bottle-we find the record devoid of any evidence to demonstrate that appellant actually was under the influence of sudden passion or in a sudden fit of rage. Rather, he informed the police that the shooting was an accident as he, appellant, fired the gun in an attempt to scare off the person. [3T. at 539].
 {¶ 96} Based on the foregoing, we conclude that the trial court did not err in not instructing the jury on the issue of involuntary manslaughter, and/or aggravated assault.
 {¶ 97} Accident
 {¶ 98} Appellant further contends that error occurred when the trial court failed to instruct the jury as requested on the defense of accident. [3T. at 823].
 {¶ 99} Criminal liability is predicated upon two components: the voluntary commission of a prohibited act and the requisite mental culpability or mens rea required for the offense. R.C. 2901.21. Accident is not an affirmative defense. State v. Poole (1973), 33 Ohio St.2d 18,294 N.E.2d 888. Rather, it is a factual defense that denies that the accused acted with the degree of culpability or mens rea required for the offense, when that involves purposeful conduct. State v. Bayes (Dec. 29, 2000), Clark App. No. 00CA0032. By raising the defense of accident defendant denies that the act was intentional or purposeful. State v.Fears, 86 Ohio St.3d 329, 715 N.E.2d 136, 1999-Ohio-111. *Page 25 
 {¶ 100} Accident is defined as a "mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act." 4 Ohio Jury Instructions 75, Section 411.01(2). Moreover, "[a]n accidental result is one that occurs unintentionally and without any design or purpose to bring it about." Id.
 {¶ 101} A homicide is not excusable based on accident unless it appears from the evidence that at the time of the killing the offender was acting in a lawful manner and without negligence. In re:Jackson (1975) 45 Ohio App.2d 243, 344 N.E.2d 162; State v. Palmer (Dec. 27, 1988], Franklin App. No. 87AP-1124. A person causing the death of another while engaged in unlawful activity is criminally responsible even if the firearm discharges accidentally, State v. Thrash (1952),93 Ohio App. 458, 113 N.E.2d 675; State v. Jones, 5th Dist. No. 2005-CA-00076, 2006-Ohio-271 at ¶ 45.
 {¶ 102} This court addressed a similar argument in State v.Rohaley (Dec. 28, 1998), Stark App. No. 1 998CA00092. InRohaley, the defendant sought an instruction on the defense of accident in a case involving aggravated vehicular homicide with a driving under the influence specification. Id. at 3. The trial court denied defendant's requested instruction. Id. at 7. In upholding the trial court's refusal to instruct on the defense of accident, we stated:
 {¶ 103} "In the instant case, the court had already instructed the jury on causation. The instruction on causation indicated that in order to convict, the jury had to find that appellant's act or admissions, in their natural and continuous sequence, directly produced Letitia Ciban's death. The accident instruction would have simply indicated that the jury could acquit if appellant's acts or admissions were not the natural and *Page 26 
reasonably foreseen result of Letitia Ciban's death. Accordingly, the instruction on `accident' did not add anything new to the general charge. Appellant, therefore, has not demonstrated that the result of the proceeding would have been different had the instruction on the defense of accident been given to the jury." Id.
 {¶ 104} The record in the case sub judice indicates the trial court instructed the jury with the standard definition of causation as to murder. (4T. at 882-885). According to our decision, inRohaley, a specific instruction on the defense of accident would not have added anything to the general instruction.
 {¶ 105} We find no abuse of discretion in the trial court's decision not to instruct the jury regarding accident.
 {¶ 106} Self Defense
 {¶ 107} Appellant finally contends that the trial court abused its discretion by refusing to instruct the jury on the defense of self-defense.
 {¶ 108} Self-defense is an affirmative defense and the burden of going forward with evidence on that issue, and the burden of proof by a preponderance of the evidence, is upon the accused. R .C. 2901. 05(A);State v. Palmer, 80 Ohio St.3d 543, 1997-Ohio-312. In State v.Robbins (1979), 58 Ohio St.2d 74, the Ohio Supreme Court stated:
 {¶ 109} "To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger. (State v. Melchior, *Page 27 56 Ohio St.2d 15, 381 N.E.2d 195, 381 N.E.2d 190, approved and followed.)" Syllabus at ¶ 2.
 {¶ 110} The proper standard for determining whether a criminal defendant has successfully raised an affirmative defense is to inquire whether the defendant has introduced sufficient evidence which, if believed, would raise a question in the minds of reasonable men concerning the existence of the issue. Melchior, at ¶ 1 of the Syllabus. In order to establish that the failure to give the requested jury instruction on self-defense was reversible error, Defendant must show that the court's refusal to give the requested instruction was an abuse of discretion and that he suffered prejudice as a result. State v.Griffin (July 15, 2005), Montgomery App. No. 20681, 2005-Ohio-3698. An abuse of discretion connotes more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. State v. Adams (1980),62 Ohio St.2d 151.
 {¶ 111} In the case at bar, appellant simply did not present sufficient evidence in this case that would enable a juror to reasonably believe that appellant had a bona fide belief that he was in imminent danger of death or great bodily harm from either the decedent or anyone else, or that any of the individuals at the party were involved in any common scheme or plan to rob and assault the appellant, that warranted appellant's use of deadly force to defend himself against the decedent. In fact, such an argument runs counter to appellant's statement to the police that the shooting was accidental. Finally, appellant was seated inside a motor vehicle parked on the street with the motor running. There is no evidence to suggest that appellant was impeded from simply driving away from the party. *Page 28 
 {¶ 112} The evidence presented was insufficient to support a self-defense instruction with respect to appellant's shooting of Mr. Joiner, and the trial court did not abuse its discretion by refusing to instruct the jury on that issue.
 {¶ 113} For the foregoing reasons, appellant's fourth assignment of error is overruled in its entirety.
 V. {¶ 114} In his final assignment of error, appellant argues that the trial court abused its discretion in limiting its questioning of witnesses in two respects. First, when the trial court refused to allow appellant's counsel to ask the following question to April Kienzle: "You wanted to get him over there that evening isn't that true? The trial judge would not allow the question because he thought it would confuse the jury because it was susceptible to two meanings.
 {¶ 115} Second, during appellant's case, trial counsel called the coroner, P. S. Murthy, M.D. to testify to the stippling found on Mr. Joiner's right arm. Dr. Murthy testified that the stippling on Mr. Joiner's right arm could have been deposited as he was standing in a defensive posture and covering his lower lip and chin. Trial counsel then attempted to pose a hypothetical question that Mr. Joiner received the stippling when he backhanded appellant with his right arm. The trial court sustained the state's objection.
 {¶ 116} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, we will not disturb a trial court's evidentiary ruling unless we find the trial court abused its discretion. "The term `abuse of discretion' connotes more than *Page 29 
an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 117} Of course, a trial court can impose reasonable limits upon cross-examination: "[i]t does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, `the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' Delaware v. Fensterer (1985),474 U.S. 15, 20, 88 L.Ed.2d 15, 106 S.Ct. 292 (per curiam) (emphasis in original)." Van Arsdall, supra, 475 U.S. at 679.
 {¶ 118} Any violation of appellant's Sixth Amendment rights was harmless beyond a reasonable doubt. In Van Arsdall, supra, the Court stated:"[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross- *Page 30 
examination otherwise permitted, and, of course, the overall strength of the prosecution's case. Cf. Harrington, 395 U.S., at 254,23 L.Ed. 2d 284, 89 S.Ct. 1726; Schneble v. Florida, 405 U.S. at 432,31 L.Ed. 2d 340, 92 S.Ct. 1056."
 {¶ 119} Appellant was not prejudiced by the trial court's restriction on Ms. Kienzle's cross-examination. Ms. Kienzle testified that appellant called her on the cell phone and said he wanted her to meet him. She further testified that after checking with others, she told him he could come over. Ms. Kienzle testified that appellant called her a couple of times on his way over and asked for further directions. Finally, she testified that she went outside to meet him. The trial court allowed appellant to inquire as to whether Ms. Kienzle lured appellant to the party. (2T. at 443-446). Further, the trial court's ruling allowed appellant's counsel to re-phrase the question:
 {¶ 120} "You are asking the question that — the thought of his coming over there originated with him. The way that your question is worded does not get to that point and could leave a false impression to the jury, and I am not going to allow you to ask that question.
 {¶ 121} "I will note your objection for the record. If you want to raise it in the context which I just did in terms of who, where the thought of his coming over originated, if it was her, if that's what you want to get to, or if it was with him.
 {¶ 122} "But I am not going to allow you to ask the question that is susceptible to two meanings. . ." [2T. at 447].
 {¶ 123} The trial court allowed ample testimony about the circumstances of appellant's arrival at the party. The trial court did not abuse its discretion in asking counsel to clarify his question to the witness. *Page 31 
 {¶ 124} Appellant's contention concerning the trial court's restriction on Dr. Murthy's questioning is also without merit.
 {¶ 125} Evid.R. 705 permits an expert to give an opinion based upon a hypothetical question that presents the facts proven at trial. However, the question must fully and accurately state the facts. Manley v.Coleman (1924), 19 Ohio App. 284, 295. The omission of key facts is improper inasmuch as it will affect the answer and thereby render it irrelevant. Id. See, also, Mayhorn v. Pavey (1982), 8 Ohio App.3d 189,192-193, 8 OBR 258, 261-263, 456 N.E.2d 1222, 1226-1227, and Surman v.Ohio Pennsylvania Oil Gasoline Co. (1962), 116 Ohio App. 453,480-494, 22 O.O.2d 292, 307-315, 183 N.E.2d 386, 404-414. The trial court is given the discretion to exclude such misleading questions from the evidence. Mayhorn v. Pavey, supra, 8 Ohio App.3d at 192,8 OBR at 261-262, 456 N.E.2d at 1226-1227.
 {¶ 126} The hypothetical question proffered in this case had already been posed to Dr. Murthy:
 {¶ 127} "Q. The stippling could have been deposited on the right arm of Mr. Joiner as a defensive, in a defensive posture; is that correct?
 {¶ 128} "A. Yes.
 {¶ 129} "Q. Okay. The stippling could have been deposited on the right hand of Mr. Joiner as a result of striking somebody inside that car — in this case Michael — and the gun going off at that moment when he is in this position of striking somebody?
 {¶ 130} "A. Because I do not see any stippling, especially on the part of the lower lip and basically the chin is free from stippling, therefore it is — I strongly feel that this part of the hand was covering. *Page 32 
 {¶ 131} "That's why the stippling took place here. Therefore it was the hand was in this position when the gun was fired.
 {¶ 132} "Q. Okay. Could you put your hand up there again? Could not, Doctor, a bottle or an object have been like this in order to hit somebody with it, and couldn't it have been deposited just that very same way, with the arm shielding this when [appellant] was going to be hit with that object or struck? You have seen — can you answer that?
 {¶ 133} "A. Then there would have been stippling in the chin and the neck. Therefore it was in this position.
 {¶ 134} "Q. Did you see any on the neck or chin?
 {¶ 135} "A. No."
 {¶ 136} [3T. at 687-688]. In order to answer the hypothetical question in the manner that it was proposed by appellant's counsel would require Dr. Murthy to ignore the fact that the doctor found no stippling on the part of the lower lip and the chin. As the hypothetical question that counsel sought to ask failed to consider these facts, we find that the trial court did not abuse its discretion by excluding the answer to appellant's hypothetical question from evidence.
 {¶ 137} Appellant's fifth assignment of error is overruled. *Page 33 
 {¶ 138} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed.
 Gwin, P.J., Farmer, J., and Edwards, J., concur. *Page 34 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas, Ohio, is affirmed. Costs to appellant. *Page 1